524-0923, and it is Hopkins v. Coffman et al. I understand that you have on the affilee side two gentlemen who are going to split their time evenly. Is that correct? Yes, ma'am. All right. Mr. Dury for the appellants. Yes, ma'am. You may proceed. I'm sorry? I just was requesting a little time. Okay. You may proceed. Thank you, Your Honor. I please the court. This is an appeal under Rule 304A from a summary judgment or two summary judgments that were granted on four counts of the amended complaint. The standard of review is de novo. The first count was by Darrell Hawkins for false arrest or false imprisonment. The terms seem to be used somewhat interchangeably. When his next door neighbors, the Coffmans, claimed that they had built or had established a daycare center in the adjoining property, and Darrell had pleaded guilty to a misdemeanor sex crime in 1997 for having sex with a girl who was under 18, he was required to be registered for 10 years, which he did. But the Sex Crime Act applies for the rest of your life. So under that statute, if the way it's been interpreted, at least, if you have a home and someone builds a daycare center next to you within 500 feet, you have to move. You can't live there, even though if you were living there first. So what the Coffmans did in this case, and there had been numerous things where they had been harassing and persecuting Darrell over the years, what they did in this case was come up with a sham or pretend daycare center, and then they contacted the sheriff and said, we have this guy who's pleaded guilty to a misdemeanor sex crime, he's within 500 feet, he has to move. The sheriff had a letter delivered, which said that Darrell had 30 days to move out of his home, or he would be subject to arrest and prosecution. The trial court initially denied all motions for summary judgment by the sheriff and his deputy, Todd Garden, and by the Coffmans. And then they all filed motions for reconsideration. Those motions were denied. And then six days before the trial setting, the trial judge changed his mind and said he was granting summary judgment on count one because he didn't believe as a matter of law that the letter that was delivered to Darrell was a restraint. So let me stop you there, because that's one of my questions. The elements for an action under this false arrest or false imprisonment is that, I'm reading something from your brief, that the plaintiff was restrained or arrested, that Mr. Hawkins was never arrested, he was never handcuffed, he was never taken to the local jail, anything such as that, correct? Yes, correct. So how is there a restraint or an arrest? The restraint, as defined by the cases that we have cited, is if it interferes with your personal freedom of locomotion. And that's from the Supreme Court in the pretty well-known case of Mirbree v. Marshall Field, which in turn cited the Second District case of Dutton v. Rimack. So the issue here is, is this a restraint of Darrell's freedom of movement, freedom of locomotion? And in this case, the letter from the sheriff said, if you don't move within 30 days, you will be subject to arrest and prosecution for violation of the Sex Crime Act. So the one element of the cause of action for false arrest is prohibiting somebody from entering their home, a restraint. But you just admitted that under the Sex Crime Act that he was convicted of, if somebody opens the daycare next door, he has to move out the daycare. True. So is that exactly what is alleged to have happened here, that there was a daycare, so your client had to move? How can that be a restraint? No, Judge Gates, what is alleged, and actually what the trial court found, is that the daycare was a sham. I understand that, but so hypothetically that the daycare was opened appropriately, your client would have had to move. The fact that it was a sham doesn't make the fact that he has to move any different in my mind. No, he was required to move by the sheriff's letter, he would be subject to arrest or prosecution by the sheriff according to the letter. But that's a potential, that's a fact in the future, assuming the daycare is a sham. It seems that you didn't file an intentional infliction of emotional distress claim. I didn't see that in your complaint. Well, I don't know what to say. I mean, it's different. I don't see how you get restrained under your theory. The restraint is this. First of all, it's at the very least a disputed fact as to whether the daycare center was legitimate. It was a sham. In fact, the judge found it was a sham. He simply said, Barring Darrell from going to his home was not an unlawful restraint. And I've cited to the court the case of Toothman v. Hardee's, a 1999 decision of this court, which in turn cited Mirbree v. Marshall Fields, which says, a restraint occurs when the plaintiff yields to force or the threat of force or to the assertion of authority. So I can't imagine anything that would be more of a restraint of the freedom of locomotion in saying that falsely, of course, in this case, you can't go to your house, you can't go to your home. That is definitely a restraint from going to his home. The trial court said, well, he could go other places, so it wasn't a restraint. And I would assume that that's an improper application of the law here, because a restraint is freedom of locomotion, freedom of movement. And when you're barred from going to your home, that's the greatest restraint you can have. And if he had gone to his home during the three months or so that he didn't, if he had gone to his home, he was under threat of arrest and prosecution. So that is definitely, I would submit to the court, at the very least, issues of fact, at the very least, issues of doubt on the law, which precludes summary judgment. And Judge Miller himself had doubts because he twice denied the motion, well, he denied the motion for summary judgment, and he denied the motion for rehearing on the summary judgment on count one until he changed his mind. But he changed his mind solely because he concluded that since Darrell could go other places than his house, that was not a restraint. And I would submit to the court that's an inaccurate application of the law. So at least there's a question of fact. At the very least, yes.  And so we submit, really, for two reasons. The summary judgment on count one was an error because it was a misapplication of the law in finding that this was not a restraint. And secondly, there's disputed facts about all of this. I mean, certainly. So talk about the individual defendants in count one. So the individual who wrote the letter was the sheriff. Right. So to that defendant, there would be a question of fact.  What about the Kaufmans? They're the ones who procured the ñ they're the ones who contacted the sheriff. They were contacting the sheriff all the time to complain about Darrell Hawkins for numerous reasons. This was one of them. So this is definitely, at the very least, a disputed fact that they contacted the sheriff. And the case of Dutton v. Rumack says that when a private individual procures the prosecution for either false arrest of an individual, the private party is just as responsible, just as liable for either a malicious prosecution or false arrest claim as the sheriff and his deputies who actually do the arresting or the prosecution. So in this case, the Kaufmans would be liable. In fact, they initiated all of this. They had the sheriff out there constantly. This was one of the things. I'm sorry. Well, and I think just ñ I mean, there's a lot to go through here in a short period of time. But I think kind of what you just got to also applies to the count five where you talk about the malicious prosecution, correct? That's count four, Your Honor. I'm sorry. I didn't get that correctly. Okay. If I may move on to the malicious prosecution by Darrell. The malicious prosecution arose out of a banquet at the school, the Raccoon Elementary School, where his stepdaughter, 13-year-old stepdaughter, was an eighth-grade student. And Darrell and his wife received an invitation to go to the ceremony that was honoring the eighth-grade class. He and his wife went. He previously had permission from the principal, Matt Renaud, to park his truck there several times a week in the parking lot. But on this occasion, he had ñ Was that permission while school was in session, or was that like over the weekends or in the evening when the children were out? In the evening, Your Honor. It was like a special event to honor the eighth-grade class, a special ñ I'm sorry. His permission to park his vehicle on the parking lot of the school several times a week. Was that while children were present at the school, or was that in the evenings?  I think it was in the evenings, not when people were there. Okay. My main argument is he had a written invitation to go there. But obviously, does he have to have specific permission as a convicted sex offender? Does he need to have ñ does he have to notify the school of his status as such and have special permission to be on the premises when schoolchildren are around? My recollection of the Sex Crime Act section in question here is that he's not obligated to notify the school that he has this previous conviction after the point where he was supposed to register for 10 years, and we were past that point. But to go on the school grounds, he needs the permission of the principal. And he had the written invitation. And he was there among 350 other people for 35 minutes. I don't mean to stop there, but to me, that's irrelevant. Going back to Justice Barbera's question, well, I take that back. What I said is not irrelevant. 350 people were at that event. I'm assuming every one of them were there pursuant to the written invitation to come and honor their child, niece, nephew, grandchild, whatever. And he received one of those. That is not, to me or tell me if it is, a specific request of the principal for Mr. Hawkins to be present on that school property for that event. I would respectfully disagree with the court that if he had a written invitation to be there at a public event, where there could be no possibility of some kind of improper action within a student with 300 people, 350 people present, if you have a written invitation to be there, that you're not violating the Sex Crime Act by attending. Period. Especially after your time for registration is gone. The time for registration is different than what we're talking about today. I understand about the time for registration. We're talking about the residual part of the act that says for the rest of his life, he has to abide by certain rules and regulations in order to go certain places. Yeah. Correct? And again, the statute says if he has written permission to be there, that's not a violation. Okay. And in this case, he attended three pretrial hearings. And on the third pretrial hearing, which is supposed to be a preliminary hearing, the state nolly-crossed the case, and they said that their chief witness, Kevin Cripps, was not available, but he was seen on the ground floor of the courthouse on the day that he was, quote, not available. And they haven't refiled any of the charges. I think that's relevant, and I think that's interesting. But to go back one step, the invitation that he received, prior to his receiving that invitation, do you know, do we know, was the school principal aware of his status as a sex offender prior to that being sent out? I don't think that was developed in the facts one way or the other. Nobody claimed that he was there because of the violation of the Sex Act in the record. The record doesn't seem to have that in it. What happened is that Jason Kaufman, one of the neighbors, is on the school board of the school, and the principal, Matt Bernard, works under him. If he's on the school board, he has to respond to him. And after this event is when the Kaufmans persuaded Matt Bernard to file the criminal complaint, which resulted in the criminal charge that was eventually dropped. I see my time is up, but I know I didn't get to all of the issues. I didn't get to Colton Downs. I have one other question, and that is with regard to the suit that you filed, is there still an outstanding claim or account? Yes. And that's on this? I mean, it was not severed. It wasn't filed as a separate lawsuit. It's still involved in this? That's why there was a 304A ruling. There's one count that remains in which Darryl Hawkins alleges that the Kaufman shot his special dog. I think he's diabetic, as I recall, and he has a special needs dog. And he claims that Jason Kaufman shot his dog. That count is still pending in the trial court, but that's the only count that is still pending in the trial court. So you were granted an introductory bill? Yes, we requested the 304A ruling, and the judge granted it. Ms. Durie, when you present Count 7, the dog count, do you intend to ask the court to give it context as far as the conduct of the Kaufmans and the Sheriff's Department in this case? In other words, do you want to bring in some of this other activities that have been going on by the Kaufmans as context? I think for, yes, to prove malicious conduct, to show the pattern of continuing contacting the sheriff over and over again, yes, I think that would be relevant, irrespective of how the court rules on the summary judgments. The conduct is still there. Because I'm wondering why this court should accept the 304A with all of this still pending, with one count still pending, and all of this, why should we breach the merits of this case? Well, I think just my position that judicial economy would be served by doing so instead of having a trial on the dog case, dog count, and then coming back up here and arguing this all over again if necessary. So, and if this court rules in favor of the appellant, we might still be able to try all the counts together, whatever remaining counts there are, together. So I'd ask the court to rule, but beyond that, it's sort of out of my control. I just want to follow up, and I'm sorry if I'm beating a dead horse. Going back to Mr. Hawkins being on the school property, I think Justice Barbera's reading, so Mr. Hawkins had permission to park his vehicle at the school, and according to your answer, it was in the evenings when school is not in session. Yes. But did I not read somewhere that he was coaching softball or coaching something on the school grounds? I think that is, I believe that is not correct. Okay. I don't recall the details right now, but I think as a follow-up, as we got more information, that turned out to be he was coaching somewhere else, not at this school. Well, because I think that would have a direct impact on whether or not Mr. or Principal Winnab knew. Yeah. Okay, so that was my question. Yeah, I don't, I just, it's my recollection that when we get to the bottom of all the facts, that he was not coaching softball at this school. Okay. But he might have been coaching softball somewhere else, but not at this school. Okay. Thank you. I think that's it for right now. Okay. Thank you, Mr. Doreen. Thank you. We'll have some time after the athletes make their argument. Okay, who's going first? Mr. Salisbury? Yeah, I'll go first. Okay. And you're on behalf of the conference. Is that correct? That's correct. All right. I'll just jump right into You state your name, just for the record. Sure. Brent Salisbury on behalf of Jason and Kimberly Kopp. Thank you. We'll jump right into count one, and the facts have already been kind of discussed, so I'm going to get right to the arguments that we make, because we have short time here. I think it's clear, and I think the trial judge became aware when we were looking at jury instructions, getting ready for trial, that because they had to first prove the element of restraint or arrest, and that there was no evidence of that, that that count one couldn't go to a jury. And so that's why he – there was already a stormy judgment on all the other counts. The count one was the only one left we were going to try at that point. We were never going to try this new count seven that was being brought up. We'd already made all these rulings. Count seven came in right at the last minute, right before trial. It was always going to be tried separately. The court just didn't want to give it a new case number. But it appeared to me that it's Judge Miller was only there certain times, maybe for this case, that he was kind of doing it for judicial economy to keep it on the docket and keep it moving forward. Yes, we're not even part of count seven that's going forward currently. So with regard to – You're not parties? What's that? Did you just say you're not parties to count seven? To count seven, no. That's a whole new – it's going to be a whole new separate trial, and my client didn't have funds to keep me on for another trial. Then how might that affect the questions regarding the 304 finding? And according to Mr. Drury, if these matters go forward, he might want to try these all together. I'm assuming that – I don't know if the Coffman's a pro se. They would proceed on that pro se. I think I read Joe Breyer might be getting involved. Talk about a procedural nightmare. I don't disagree with that. But we're here just trying to handle this. Sorry, I'm going to go forward because my time is limited. Again, Mr. Drury, he – in saying what is considered restrained arrest, he said used to force, threat of force, or authority. I think there is simply no evidence that the Coffman's had either threat of force, they were having the Hawkins – Mr. Hawkins yield to their force, or they had authority over Mr. Hawkins to restrain him, detain him. This is simply a letter issued by the Sheriff's Department on a tip from the Coffman's. So regardless of whether or not the Coffman's daycare was a sham, we – that's not – we're not going to dispute that here today. That doesn't matter here because that's part of the second element of what it comes to the false arrest or false imprisonment. So you said you're not going to dispute the sham nature of the daycare. No. Are you conceding that then? Not conceding it. I'm just saying it's not relevant to the element one, whether or not there was an arrest or restraint. So that's been our whole argument that we don't even get to that second element. The trial court actually – Mr. Dries said the trial court found that as a matter of fact, that there was – No, that's an accident. There was a – I think there was an order of protection hearing where there was concerns, and there – so there was a separate hearing where the judge, I think, made some comments where he thought maybe there was some issues with the legitimacy of it. But the trial court never made any – I don't remember that. The trial court never made any findings with regard to the legitimacy of the daycare. So, again, I think what they're trying to say, their strongest argument, is that a letter sent by the Sheriff's Department shows that there was an arrest by the Kauffmans. And I just think that's – there's no case law that's ever been said that arrest has been defined that broad. And so – and even if it is that broad, arguably the Sheriff's Department may be considered, but it's – So, Mr. Dries argues that there's a restraint as opposed to arrest, and that by being restrained from – by force – by threat of prosecution, if you will, that he was not allowed to go back to his home, and that his case that he cites suggests that a private individual who facilitates or brings to the authorities knowledge of – you know, makes a complaint, basically, that they're facilitating that and can be held just as liable. I think he's conflating two issues, and I think it becomes the most prosecution. So in that sense, when a private individual does make and push for a prosecution of someone based upon false information, and, again, the case law says they have to be a significant involvement in that, that's the claim that he would have. He wouldn't have a false imprisonment claim against that private individual. There's no case law that suggests that would be the route to go when someone's giving information to the police and leads to your arrest. It would be, yes, a private individual can be part of malicious prosecution if they are pushing it and giving all this false information and are a significant part of that malicious prosecution. So – and I think that brings me to the most prosecution count, four. But, again, when it says significant involvement, that means that they have to be the ones that are causing the prosecution. So just giving evidence or giving a tip to the police is not significant involvement. That's not sufficient enough to be liable for malicious prosecution if no one would ever give any tips to the police. But the question here is not liability. The question is whether there's a question of fact that exists, because it was summary judgment that was granted. Correct. And he referenced disputed facts a bunch of times, but I don't – I didn't hear anything we've disputed. Even when it comes to Bernal and whether or not he had permission, again, it doesn't make a difference. The Kauffman simply said, hey, he – this guy, he has – he's a former – But the extent of the Kauffman's involvement is a question of fact under the malicious prosecution count. No, there's no question of fact. We admit – really, we definitely said, hey, he's at this event. We don't think he should be here, and we told the principal that. There's no dispute. I understand, but then one of the clients is either on the school board or related to a school board member, and that school board member, I believe, was involved in something else that went on in this case, Jason. So I'm talking about the nature and extent of Kauffman involvement is merely – is perhaps beyond, hey, this is the guy. I didn't see that in the evidence that he cited. It is brief to suggest that the Kauffmans were involved any more than making the school aware that this had occurred. They didn't have anything to do with the police officers making the meeting and the possible arrest that would never end up actually – I mean, the arrest occurred, but he never actually got prosecuted. So, again, he never even was prosecuted for this as well. So, again, I don't think giving that tip – He was never prosecuted? So, it depends on the definition of prosecution. But, no, he – they got to the final pretrial, and then now they did. Okay, but he was prosecuted. He was charged. He was charged, yes. But, again, that was not – we didn't have a – and based on the case law, we didn't have significant involvement. The police department did an investigation and made their determination on whether or not they were going to arrest him. And we weren't a part of that. Okay. The Colton Downs count three. That's the same argument I've made. There was no arrest. And – I know you got through a lot. I know. I would ask the presiding justice if we could ask a few more questions because I do have one. Thank you. So, as to Colton or Downs, because in the plaintiff's brief, I think it argued that Colton was restrained because he was arrested, handcuffed, charged with criminal trespass, taken to jail, and incarcerated until he posted a form. But I thought I read somewhere that he basically went and turned himself in and, I mean, I guess that might be a question, but was he arrested, handcuffed? I just – it seems like there's a question of actually what happened there. On what count? That would have been count three. Count three, yes. Now, I think he was detained and I don't think there's any –  And I think the sheriff's department can speak more to that. Okay. Based upon our complaint to the sheriff's department that he was on our property looking at a birdhouse. Okay. Maybe I asked the wrong person. I'm sorry. I mean, our position was that even if he did get arrested or restrained, it's not relevant to the Caulfields in a sense. We simply made the tip, hey, I saw him on our property, and he admitted he probably stepped on the property. The police officer at the police department came, investigated, and then decided to detain him. So, I'm lucky, and I know this will be a question for you, but with regard to the sentence, Colton's on your client's property. There's a – in his brief, it says that, you know, he – there was never – Colton said, well, I didn't know I was on their property. You know, I went to look at the camera, and I turned around and walked away. And I believe it was your clients who notified the police that he was – he should have been notified of the fact that he was on private property because of no trespassing signs. Were the no trespassing signs – where were the no trespassing signs on their property? I don't know if they were specifically right next to where the birdhouse was because the birdhouse was close to the edge of the property. Because I read that Colton had to get in the vehicle and drive to the birdhouse. I'm not sure how big these properties are, but he drove out by the birdhouse along a road. And I'm just trying to figure out where the signs were. If they were at the front of the property, and this is way back on the back side of the property, is there a sign that was – As we say, I don't think that came up in the depositions, the locations of the signs. Again, because it was our position that whether or not he trespassed or not wasn't really relevant to the claiming itself because that was a determination by the Sheriff's Department. And their investigation – we just thought maybe he was, and so we wanted them to come investigate.  Well, you guys provided a video of him standing under the bird feeder looking at the camera. And he admitted, yeah, I was that close to the bird feeder, so if that was across the line, I was across the line. I guess my question again would be for your colleague. The police department did the investigation based on the fact that your clients provided video and your clients provided the statement that he should have known there was a trespassing sign. So I'm assuming that based on that, the Sheriff's Department doing a federal investigation would have went out and taken a picture or at least located where the no trespassing sign was and didn't just take your client's word for it. I'm assuming that occurred as part of the investigation, yes, but I'm not sure. And then the only other remaining comment is the invasion of privacy. And just a quick point there is I think the case law is clear that if you have cameras that show other people's property, the exterior of that property, it is not invasion of privacy. That the only way you cross that line into invasion of privacy is if you can see inside their home what private activity they're doing inside their home. The police department investigated that, found that there was no evidence just that any of the exterior cameras on the Hawkins home could see inside of the Hawkins home. How many cameras were there? Two. Just two? Just two. Okay, it made it sound like, I don't know if it was three, three, or somebody else was three. It made it sound like there was just a whole array of them. And I think, I guess, two relevant ones. There was one in the birdhouse and one inside of the house. I think there might have been other cameras maybe on the other side. But I think there were two. So there were cameras that these charges. There was two that you could see the Hawkins property. I think that's kind of what, I don't want to mislead the court because I can't say exactly how many cameras. And again, I'm just trying to get a better picture here. If one is located inside of a bird feeder at the edge of the property, presumably, looking outside of the property, it's not protecting their property at all. It's not going to monitor their property at all. If it's on the edge looking out, I mean, unless they were really concerned with that three feet that Colton made or stepped across, it's not going to provide who was on their property except for that three feet. So it does seem like it's surveilling someone else's property. It included their property. It also included their property. But, again, there were concerns. They had a child sex offender living next door. I don't disagree with you. Don't read into what I'm asking. I don't disagree with you. I may have more than two. Right. That's what I'm just saying. But, yeah, it was looked into and you could not see inside of the Hawkins home. And then Mr. Hawkins was even asked, like, hey, you were part of this investigation. You agree that there was no evidence any of the cameras could see inside your home and you agreed in his deposition. So anything further? I don't think so. All right. Nothing further. Thank you. Now let's look for the Sheriff's Department. Good morning, Your Honors. Please report. Attorney Joe Bracey. We have the Marion County Sheriff's Office defendants. As to count one, that's the claim involving whether there was restraint or not related to the daycare. The defense counsel argued that his clients were, that Darryl was barred from freedom of movement. And he said, barred from going to his home. That's not an accurate statement of the disputed facts here. Darryl testified that he stayed at his home throughout the day. He would go down the street to sleep at his parents' house. So he was not even restrained from the residence or was prior to his residence. Well, there is a restraint on his ability to go to the house at any given time. He's allowed to go there during the day. If he only wants to go at night, he's restrained from doing that. Or have. Restraint under a false arrest or detention claim is akin to a Fourth Amendment seizure. A police show of force saying, don't move. You are detained until I say you're free to go. We cite several cases that say there is no restraint if you're free to travel to the entire rest of the world except for this one location. Again, it's a pre-enforcement letter. He was never detained, arrested, cited. No, but he was threatened with detention. Right, and that was never followed up upon. But how would he know that? How would he know that you would never follow up on it? Well, he returned to his home and resides there two or three months after that and has ever since. Oh, he may have. I thought he moved. No, he stayed at his parents' home for two to three months and then went back to the residence where he resides ever since. So he may have just taken that as a risk he was willing to take during COVID. It doesn't mean that he went back and then, lo and behold, no action was taken, so he remained, right? I mean, it doesn't mean that he went back knowing that he was not going to face any repercussions for doing so. There's been no affirmative statement by the sheriff's office that says I will not enforce this, but the passage of time has shown that to be true. It's been over five years. Okay. Is he still being next on? I believe so, but that would be a... I'm not sure. Additionally, the analysis as to the sheriff's office defendants, they're entitled to qualified immunity through enforcing the law as tort immunity for local government. And we've raised this in the trial court and the federal court. Plaintiff's counsel has never responded to that argument, but essentially the qualified immunity afforded to them is that the plaintiff has to prove willful and wanton conduct. As to count one... You know, I didn't see any argument noted by the trial court in its transcript on that. It was very curious to me that in granted summary judgment, the trial court did not make any reference to the immunity claims that the sheriff's department raised. Are you aware of any immunity ruling in this case? I mean, if you argue immunity to us, I'm worried that that would be a new issue that the trial court did not have the opportunity to review. It was raised in the trial court, and the judge in his oral rulings said based upon the defendant's arguments. What the court said is I adopt all the defendant's arguments. I mean, he gave one of those very broad rulings. Am I correct about that? I mean, I have... Correct. He did not specifically rule upon whether the immunity issue applied or not, but we raised it, so it's not waived or forfeited based on the trial court's failure to specifically address it. Okay. All right. So you want to argue willful and wanton? Yes. It's undisputed that it applies here. I understand, but when you argue willful and wanton misconduct, you're arguing the 2-615, or are you arguing 2-619? It's 745 ICS 10, section 202 of the... No, but the basis of your motion for raising it toward immunity, are you saying that it's an affirmative defense that you're raising? It's an affirmative defense that we argued in the summary judgment motion. Okay. So that means that when you raise the 2-619, you're accepting that the plaintiff's complaint states a cause of action for which there is an affirmative defense. That's why I'm asking you the question. Yeah. It was raised at the summary judgment, 1001, not 2-619. Okay. All right. I understand the difference. And so the facts involving the sheriff's office on count one, two non-party officers investigated the daycare claim. They asked dispatch to verify the distance between the homes. They obtained a copy of the DCFS license for the daycare. They spoke to the Kauffmans and asked if they were watching any children other than their own. They consulted with the Illinois State Police sex offender unit. And then the two defendants named on count one are Lieutenant Garden, who was on the allegations that he delivered the letter, and then Sheriff, who authored the letter. We've all sort of rushed over the Colton trespassing plan, but there the sheriff had no involvement whatsoever. The plaintiff did not allege vicarious liability. He sued the sheriff for intentional torts. The sheriff did not involve him. The sheriff was not involved in the camera incident? In the criminal trespass to Colton, correct. He was not personally there. A deputy investigated it. When Colton arrived at the police station for the sheriff's office, he was both in process of a bomb. The sheriff didn't do that. There's no allegation of that. Did the Sheriff's Department investigate that claim? And have you heard what I was asking your colleague in terms of where the no trespassing signs were? A sheriff deputy, a non-party deputy, investigated that. He notes in his report the statement from Mr. Colton that there was no trespassing sign. We do not have those facts in the record as to where it was located. So the court would give no evidence as to where any kind of, if there was in fact no trespassing sign, and if there was, where it was located? That's correct. Okay. As to the count for the last claim against the sheriff's office defendants, the school principal, Mr. Renaud, signed a criminal complaint. The sheriff and one of the sergeants did not institute that prosecution. Sergeant Cripps is the individual who arrests him in connection with that prosecution, but again, neither one of them initiated it. And Sheriff Stevenson was not involved in that either. Is Marion County named as a defendant? If so, it's solely for purposes of identifying the officers. I can't recall offhand if it's proper to name the sheriff's office, and we wouldn't allow it for that purpose. Sometimes folks name the county. I can't recall which one's here. But the sheriff's office is named in this case? There are no allegations against the sheriff's office. I know, but the deputy. My question was, is the sheriff's office named in this case? I apologize. I believe so. I believe the county is named as a defendant. And under Illinois law, it should technically be the sheriff's office, but obviously insurance will apply. Marion County is named. Correct. And as to the court's questions as to Count 7, we objected to the addition of that claim. It's from conduct unrelated. Five years later, all defendants objected to the addition. As the court noted, the trial court essentially said, well, I've been specially assigned to this case because I'm from a different county and the judge is here, conflicted. Let's just keep it together. There's no allegations against the sheriff's office as to that pending Count 7 claim. I am curious about the false arrest claim in Count 3 for your clients. Don't you have to have some kind of knowing violation in order to have trespass? Yes, Judge. We point to the trespass statute, and it says that notice can be posted either in that specific area or at the main entrance. As we just explained, those facts are not before us in the court. But the fact that we can't answer the question is what concerns me. We don't have the answers, so does that raise a genuine question of fact? Well, it's important to look at which sheriff's office defendant is naming that claim. He's named the Sheriff Stevenson, which as I've hinted at, as I discussed earlier, there is no dispute that he had no involvement. The plaintiff did not plead by case liability. That's why I asked you if Marion County was named as a defendant. Because if Marion County is named as a defendant, don't you have employment by a sheriff's deputy? Well, that is a little messy, but Illinois law says they're employed by the sheriff's office. The sheriff's office has a duty to identify. But, yes, they do, in fact, work as county employees. Right, so that's... But the plaintiff also has not alleged Marion County is vicariously liable for this action of a non-party deputy who arrested the process co-op. Well, in this case, as I read this complaint, quite frankly, to all counsel, everybody is mixed in with everybody else on these counts, right? And Illinois law is clear that if you want to sue somebody, it's got to be in separate counts with separate individuals. So you've made our job much more difficult. Not you, but our job has become much more difficult in this case trying to ferret out who is involved with what. Because the complaint clearly doesn't comply with Illinois law. That is a fair criticism of all counsel, but it also reiterates that the analysis is unique to each individual. But you didn't file a motion to separate out the claims either, so now you've dumped it in our lap, which is why I'm wondering whether we should consider it at all under 304A. Well, again... And I'm not, I mean, I've raised my voice, but that's more for the recorder over there. The clerk asked me to do that. And again, we're stuck with the trial court's discretion as to allow that amendment last minute, years later. And during that objection, we essentially said, that count may take years to go to trial. If this is not allowed to proceed on appeal, the sheriff's office just has to sit and wait for their chance. I understand. Justice Boyd, any questions? I don't think so. Okay, Justice Barber. I think that's all. All right, thank you so much for your argument. Thank you. Mr. Lurie, rebuttal? Thank you, Your Honor. I would say to you the same thing I just said, in that you'd make our job more difficult by the filing of your complaint. I don't want to be critical of one without the other. They should have filed motions, but you filed the original complaint.  Marion County was a defendant only in Count 5, which sought a declaratory judgment that the sex crime act which was enacted after Darrell Hawkins pleaded guilty to a misdemeanor, saying that you can't get within 500 feet and so forth, and Judge DeLong dismissed that count, and it's not on appeal here. Marion County was not a party to any other count other than the declaratory judgment count, that that was an ex post facto law. I think since then, the Illinois Supreme Court has ruled on that issue, if I'm not mistaken, and said it's not ex post facto. How do you get around the immunity? I don't argue that these officers or police officers, they have some limited or ballpark immunity for doing their job. Well, as I recall, the issue there was whether they engaged in willful conduct, I believe, because every time the Coffmans would call, the police officers would go out there and file some kind of a charge. There was some kind of relationship there. But when Judge Miller ruled against the defendants on that issue and denied the motion for summary judgment altogether on Count 1, and he only revived the summary judgment on Count 1 on his ruling that the letter was not a restraint that barred Darryl Hawkins from going to his home. He even specifically said, and we cited this in the brief, that he found that they didn't qualify as a child care center for numerous reasons. Even before we got to the argument, they didn't have any students anyway, and they had full-time jobs somewhere else. But he didn't even get there because he said it's not a child care center, but he ruled on that issue about whether that was an unlawful restraint or not. And I'd like to point out to the Court, we haven't had a trial, and there's lots of questions about some of the facts, but that's the reason you have a trial. You don't have a summary judgment, which I cited to the Court, Fourth District case, Redding v. Heiser, 2013 Fourth District case. It says summary judgment is a drastic measure. I know you hear those standard phrases on summary judgment one way or the other, and it depends on how the Court rules as to which ones are applied, but it is a drastic measure, and it shouldn't be granted when there's issues of doubt as to the law, and it shouldn't be granted when there's legitimate disputes as to the facts. Whether or not there was a posted sign, do not trespass sign, is a disputed fact, for example, with respect to Carlson Downs, which was not resolved by the summary judgment motion, and he definitely was restrained. He had to post a $1,000 bond to avoid being incarcerated. How old is Colton? I believe he was around 21 at the time. He's Daryl Hawkins' stepson, so I'm guessing he's around 25, 26 now. On the invasion of privacy account, which is count six, it's not just that the Coffmans had these cameras. They fed into a monitor in their home, and they recorded everything. All right, that's what security cameras do, but my bigger question is, was that camera on the edge of their property and focused solely on your client's property? Definitely. Okay. Definitely, and that's why Colton went out there to look in the birdhouse. It was sort of camouflaged in a birdhouse, and he just wanted to see if there was really a camera in there. That's why he was charged with trespassing. But they were focused entirely on everybody who had ingress or egress from Daryl's home, but not only did they do that, they reported this constantly to the sheriff's deputies to have them come out and look at the monitor, and every time they saw something that they thought was arguably a violation of some law, they would ask the sheriff's deputy to file some kind of charges against Daryl. So it was more than just... Why didn't you file against the sheriff's department? I mean, you filed against the sheriff. Right, well, he's in charge. I understand, but you're talking about an individual deputy or deputies that came out, and you're talking about a course of conduct by the sheriff's department, but we don't have the sheriff's department as a defendant. So we've got to have the right defendant. I would submit that the sheriff is the right defendant. He's in charge of the department. He signed the letter that was delivered that was the argument... On the unlawful restraint. Yes. How about the birdhouse incident? The birdhouse incident, how do we get around it on that? You haven't fled vicarious employment. I'm sorry, Your Honor. Acting sheriff's deputies. Did you plead that? I believe so. Okay. But does that not go with the argument from opposing counsels that there's nothing in the pleading that says vicarious liability? Correct? Right. I mean, you shouldn't have to try to, as a judge, manufacture a claim that should be laid out by the attorneys in the pleading.  How many opportunities were you given to amend the complaint in this case? I'm sorry, Your Honor. How many times did you amend the complaint in this case before some of the judgment?  Twice. Just to clarify, is that prior to the adding of the count seven? Or does that include the adding of count seven three years down the road? I believe if you count adding count seven as an amendment, that would be three times. Okay. That's my question. And I think Brent might have mentioned, I'm not sure if there was, I didn't quite catch what he said, but count seven is still pending, but for a long time the Coffmans didn't have a lawyer. They had a lawyer who then withdrew, and Brent's office does not represent the Coffmans on count seven. They got a new lawyer whose name I can't quote right now. I don't recall it. But he filed a motion to dismiss. That's where count seven is, and I haven't responded to that yet. But there was a long period. I think we even filed a motion for default judgment because they weren't getting a lawyer. So I don't think it matters who the lawyer is on count seven. It's still pending. Any other questions? Questions? I don't think so. Thank you, Mr. DeRee. Sorry we made the court's job more difficult. I guess that's what we're here for. Thank you. Thank you. That will conclude the arguments in 524.019.3. The court will take the matter under advisement and will issue an order in due course.